And Officer Nicoletti, 21-12-98. Good morning, Mr. Haselbarth. How are you? Yes, sir. Very good. How are you? Very well, thanks. And I would like to request three minutes for rebuttal. Sure. Good morning, and may it please the Court, Shane Haselbarth for Officer Richard Nicoletti. Where an officer has probable cause to believe that a suspect poses a risk of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to use lethal force to prevent escape. But in this case, the judge found, having looked at the surveillance tape or the recording, that it was debatable, and there's arguments that go both ways, and you may prevail. If it's debatable, we went on qualified immunity. If it's not, if what's debatable? Did you say that Judge Wilson said it was debatable? The facts are, for example, you've got Officer Bogan on one side holstering, and only after that happened did Officer Nicoletti shoot three times. And then the question is, were the officers, in effect, is this really following what Abraham did? And if you want to look at something that came after your case, obviously it doesn't apply necessarily here, but look at Jefferson. Yes, sir. And Judge Ruschreff before the court in Jefferson v. Leas was very clear that the one officer on appeal, Officer Leas, had no information to support a finding, if you will, that the suspect was a danger. He came on the scene late knowing only of a possible stolen vehicle. He wasn't aware of damage to vehicles. He wasn't aware of any, you know, threats to citizens from the chase. He wasn't aware of the chase. When he got to the scene, the suspect drove his car somewhat towards Officer Leas and then passed him. We've looked at the tape. And the shots went through the side. Because he had no information to support a belief. There were a number of officers there. But the opinion deals with one. Pardon me? But the opinion deals with one. Because that was the officer that actually shot. Correct. And so here, when Officer Bogan holsters his weapon, I don't represent Officer Bogan. But I would suggest that he holsters his weapon so he's not pointing it at another officer. But let me go back to what part of the district court's opinion is blatantly contradicted by the security footage? His description that Mr. Dennis was not a danger to anyone. Well, the car was at a dead stop. The car was not at a dead stop, Your Honor. And I appreciate. That's what the judge said. After his car appeared to stop moving, right? Yes. So that's a factual determination by the court. Yes. I have two responses to that. First, I invite you to watch a video. And I assume you have. And I assume your clerks have. Real time, slow motion, real time, slow motion. Watch it again. At the moment the shots were fired. Have to do it again. Yes. At the moment where shots were fired, when Mr. Dennis pulls his car off the sidewalk and then goes forward. And Officer Golaska pulls his car forward and there's a collision. Immediately after that, Mr. Dennis's car goes forward again. And that is at the moment. Not your interpretation of the facts, right? No, that's the video. You just relayed your interpretation of the facts that contradicts Judge Wolfson's interpretation of the facts. You don't have to rely on me. I'm describing the video. He says the car was not moving. That's simply not true. But regardless, in Jefferson v. Leas, this Court criticized or one of the factors in concluding that the officer was not told to qualify immunity is because he did not wait until the vehicle stopped before he shot. And in Bland v. City of Newark, the distinguishing factor that Jefferson v. Leas said about Bland was in Bland, the shots were fired when the car was stopped. So here you have cases going both ways where if the car is moving, it's not unreasonable to shoot. If the car stopped, it is unreasonable. I'm sorry. I messed it up. The car is moving. The car is not moving in Bland. It is not unreasonable to shoot it. Because it was moving in Jefferson v. Leas, it was unreasonable to shoot it. So I don't think the car was stopped here. It was clearly going forward, as in Plumhoff v. Ricard. The wheels are spinning and he's trying to escape. But even if it was stopped, that supports the use of force here, as in Bland v. City of Newark. From the photos that I saw, it seemed like the car was stopped and there was no way to get past. In other words, that vehicle was blocked from leaving the scene. That vehicle was also blocked, you know, 10 seconds before, but he ended up on the sidewalk. So the point is... Was that after being shot? No. The shots were to prevent escape. On the sidewalk, but the vehicle simply, as I saw the pictures, could not escape that scene. It could not leave that scene. When the officer, I don't have his name, Nicoletti, I believe. That's the appellant, yes. When the officer pulled the gun and fired a shot. The car was moving forward as shown on the video. But regardless, Officer Nicoletti had probable cause to believe that Mr. Dennis was a danger to himself or others. But let me read you something. My issue here is, this is all very factually written. And if you read Judge Wolfson's opinion, it's page 11 of his opinion. And he reads, Mr. Dennis did not pose an immediate threat to any officer or civilian. His car had stopped moving. Even if it were moving, no one was in its immediate path. Officer Brogan had holstered his weapon, suggested he didn't perceive a threat to himself. There were no civilians, cars, or pedestrians in the area. Aren't those factual determinations made by the district court? And if they are, do they clearly contradict the video? Not only the video, but also the undisputed summary judgment record. Yes, there were pedestrians in the area. The officers testified to that. Judge Wolfson said there were none because he didn't see them on the video. But the officers testified there were pedestrians in the area. And also on the video, it shows vehicular traffic and pedestrians standing in the background. It's simply wrong and flatly contradicted by the video. So your position really is that Judge Wolfson's conclusions are inconsistent with the video? To the extent that this court can review it on appeal, yes. It is flatly contradicted. And you're saying Dennis, in effect, posed an immediate threat to the surrounding officers? I don't need to have you conclude. He posed an immediate threat. Officer Nicoletti had probable cause to believe he was an immediate threat. And that's enough to use reasonable force under Barroso v. Hogan, Plumont v. Ricard, and Jefferson v. Leas. When you look at the Abraham case, they're saying that, court, on page 79, that these types of issues, this is, remember, the person was fleeing from a Macy's after stealing a few items of clothing, driving away slowly, away from the officer. Right. And the court said this is intensely fact-specific, and it's normally one for the jury to decide. Right. And I'll give you a few cases where officers had probable cause to believe based on the testimony of the officers. Probably the best example of Lamont v. New Jersey. In Lamont v. New Jersey, the officers chased the suspect into the woods, and he turned on them with their flashlights trained on him. They said, show us your hands. He had his hand in his waistband, and the testimony of the officers was he moved as though to draw a gun and not as though he were surrendering. On that record, based on the testimony of the officers, this court held there was no Fourth Amendment violation, none whatsoever. In this case, all of the officers testified. We believed he was reaching for a gun down the console. Officer Hogan said he was reaching, and the district court credited that. You have a guy driving a vehicle within 10 feet of the officers, as Bland v. City of Newark said, was a mortal threat. You have the vehicle driving within several feet of the officers, reaching down for a weapon, ignoring commands to stop. If he was reaching down for a weapon, wouldn't Officer Hogan have seen that? He had the best view because he was on the passenger side. Officer Hogan saw him reaching down for a weapon. But then holstered his gun. I don't represent Officer Hogan, and I don't need to. I can understand who you represent. But what I'm saying is Officer Hogan holstering his weapon doesn't negate probable cause for Officer Nicoletti. Certainly didn't perceive himself. The guy with the best view in the house did not perceive himself to be in danger. No, I dispute that, Your Honor. How can you dispute that? Because Officer Hogan did not necessarily have the best view in the house. He was looking through the windshield. Officer Nicoletti was directly at the driver's door with a broken window. In front of the car, Hogan is literally on the passenger side looking in. And the person who was next to Officer Nicoletti was probably the one closest. Sergeant Chuck, or before that, Officer Fitzgerald. Yes. Yes. And so when Officer Hogan holsters his weapon, Officer Nicoletti has it out. These guys are working as a team. So we don't need crossfire, and there wasn't crossfire, thank God. We also don't need stray bullets, and there were no stray bullets, thank God. The point is Officer Nicoletti had probable cause to believe that Mr. Dennis was a serious risk of harm. But all we're arguing about, or discussing, are facts, right? So how do we have jurisdiction over this? Because the record... We're disputing different people's version of the facts here. Because the record's clear. Judge Wilson's opinion is simply not acceptable based on the undisputed summary judgment record. We're not arguing that certain officers were in certain places and not others, as in Johnson v. Jones. It's undisputed. It's clearly a disputed summary judgment record here. That's why we're here. The officer's testimony is undisputed, and the video is undisputed. As in Plum Hall v. Ricard, there were facts, you know, disputed facts found by the District Court and the Court of Appeals. And Plum Hall v. Ricard in the Supreme Court said there are no questions of fact. Here's the case. The officers are entitled to qualified immunity, again, based on the testimony of the officers, the record that they developed when the subject died from the incident. Now, here the officer thought that the driver of the car was reaching for a gun. Yes, sir. But there was no gun. There was no gun, as in Bland v. City of Newark. There was no gun. In terms of what our decision would be, every time that an individual is in a car, and he can't move the car, he reaches for a gear shift or he reaches into the middle of the car, the officer has a right to shoot and kill him. Is that? I can't say that as a blanket statement, but I'll quote the court's words back to you. An officer is not constitutionally required to wait until he sets eyes upon a weapon before employing deadly force to protect himself against a fleeing suspect who moves as though to draw a gun. Who moves as though he draws a gun. Is that what the officer in this case? He said he was reaching down for a weapon. Judge, you authored an opinion for the court handed down on Friday the 10th. It was U.S. v. George Stoney, a.k.a. Butchie. And the court described it. It doesn't control the space, and it's not similar, but the court described pointing a gun at someone as a violent felony. That is a violent felony. We don't have that fact here. We have a guy reaching for a gun, driving a car, ignoring commands to stop. That guy was unarmed in this case. He wasn't armed in Bland v. City of Newark. Stoney is a completely different case. He wasn't armed in Lamont v. New Jersey. None of these people are armed, but these are – I do not deal with this problem in the street. I don't think you deal with this problem in the street. These officers go into the street and deal with this problem every day. And when a guy reaches down the center console, the only thing these guys have to act on is a split-second decision. There were quite a few officers present at the scene. There were, and they were completely unable to control this vehicle. About six – well, it's a vehicle. I understand that. But there were six or seven officers present at the scene. Six. And I understand – correct me if I'm mistaken – all of those officers had their guns holstered. That is not correct. Except Officer Nicoletti. At the exact moment of the shot you're saying? That's right. Yes. Because we don't want officers pointing at each other. Clearly, that's avoiding unnecessary harm. Well, I understand that, sure. But Officer Nicoletti approached the vehicle with his gun drawn, pointing – No. No? No. The video shows him with his gun holstered. And in Officer Nicoletti's testimony, he was asked, were you in fear when you got to the scene? And Officer Nicoletti said, no, not until Officer Bogan said he's reaching. And that's when he drew his gun. Think about what these officers are dealing with. That's when he drew his gun, but he also pointed it and fired it and shot the driver. Yes, he used lethal force to prevent escape by one whom he had probable cause to believe was a risk of harm to others. When you say risk, in looking at some of the videos, it looked like that car could not get out of there. That car was stuck. It looked like it couldn't get out of there 10 seconds before that. And in between, it ended up on the sidewalk. So clearly it can get out of there. But there was no shooting at that point. Thank God. There wasn't a shooting.  He was clearly under arrest. And he chose to – he engaged in conduct clearly showing he would do anything to prevent his arrest. The Supreme Court in this court – Tell me what he could have done if there was no shooting. Submit to arrest. And let the officers find the heroin and the pistol mag and everything else in the car. But at some point, he can't win because he's hemmed in. He can't go forward. He can't go backward. And luckily for the officers, Bogan and one other officer, they were not injured. Right. He doesn't have the right to attempt an escape using engaging in behavior that threatens the officers. This is – At this point, there's no – For you to – I guess you're going to have to make it to the jury. But what is the danger at that point to the officers if this guy cannot move? The video shows him moving and he's reaching for a weapon. There was no weapon. They did not know that at the time. And who yelled out that he has a gun? Nobody yelled he has a gun. They yelled he was reaching. And who yelled that out? Officer Bogan. When? During the tense 37 seconds. But was it immediately prior to Officer Nicoletti's shooting? Not immediately, no. That's what I thought. But I mean, think about Mr. Dennis. He's driving back and forth. He's contending with two officers reaching hands in the window. It's not surprising that he wouldn't be able to get it in time. You're making a great case for a jury. I'm making a great case for qualified immunity for my client. He had to split second decide whether he had probable cause to believe that Mr. Dennis was a danger. When you say danger, was danger with regard to his belief that he had a weapon? Is that – That's one. That's one. And the manner in which he was operating his vehicles, too. Was there any other way to disable the vehicle? I mean, in other words, could you just shoot the tires and totally disable the vehicle? No, Your Honor. That's – The reason the city has a – I'm sorry. I'm just thinking if there was – No, no. I appreciate that. Besides killing the driver. And I've thought about this. The city of Philadelphia, of course, has a directive not to shoot at a moving vehicle because it doesn't disable the vehicle. And I'll give you a comparison. Did you ever see Black Hawk Down, the movie? The bad guy is traveling down the road and two helicopters come in. Got it. They take one shot and blow the engine block and the oil explodes on the windshield. They disable the vehicle. That's Hollywood. The other example is Mullen X versus Luna. A guy is speeding down the street and an officer takes a position on the overpass and he decides, I'm going to disable the engine block. He fires six to seven shots, none of which hit the engine block. Four of which hit the driver and the vehicle rolled several times towards the officers. It's an incredibly dangerous thing to try to stop a vehicle with a gun. The car is stopped. Yeah. The car is really trapped. The car that we're talking about can't get out of there. And that's why he was still in the car when he was shot. There was no forward – there was no gap that he could engage and get out of there. I mean, the one that made it – Officer Gillespie did a terrific job. Terrific job. Officer Nicoletti did not lack probable cause to believe that Mr. Dennis was a danger. He did not submit to a showing of authority 10 seconds before that. Why is it constitutionally required that he believe Mr. Dennis was going to stop at this time? No case supports that. So, one last question. There was no other way besides shooting the driver to disable that vehicle at that one singular moment? It seemed like the vehicle was trapped. In other words, could not go forward and was not going to be able to go back. The officers lacked other tools with them to disable the vehicle. The best way to arrest someone in the vehicle is to do what they did, to surround him, to say, police, turn the car off. Most people would submit to that. The dangerous ones don't. And that's who the police have to deal with. Did anyone flash a badge? I think the only one with a badge that I saw was at the right rear passenger side of the vehicle. Not a badge. That was a raid vest that said police. Officer Fitzgerald in the bright green shirt was standing directly at the driver's side window with a badge around his neck. And the testimony from Mr. Dennis' fiancee was that she remembered the name Nicoletti because he arrested him before. Clearly, these guys knew each other. Mr. Dade? Your Honor, if you may please, the court, I represent Mr. Rush, the administrator of Mr. Dennis' estate. I want to start with a question that Judge Ambrose and a question that Judge Estrepo asked, which is that this sounds like an argument that should be made to a jury, and I think that's exactly right. You know, on qualified immunity interlocutory appeals, this court is looking at, you know, whether or not the right that the district court identified was clearly established and whether or not, construing all facts in my client's favor, the non-moving party's favor at the summary judgment posture, whether or not a reasonable jury could find that that right had been violated. And I think that's exactly what's going on here. What do you think of counsel's argument that Officer Nicoletti was under the impression that Mr. Dennis was reaching for a firearm and he had probable cause then to shoot? Yeah, I think that's really important because I think that my friend got the standard a little bit wrong, which is that the standard, as this court has articulated in Abraham and Jefferson and all of the related cases, is that whether or not, what this court is looking at is whether force was objectively reasonable in the known circumstances to Officer Nicoletti. And I think that there are all kinds of reasons that, especially on the summary judgment posture, a reasonable jury could find that it was objectively unreasonable. You all highlighted some of those, which are that Officer Bogan, who was the officer Officer Nicoletti himself said that he thought was in danger. Officer Bogan had holstered his own weapon. All of the other officers on the scene either didn't unholster their weapons or reholstered them. He was the only officer at that moment who had his firearm out. What should Officer Nicoletti do when he hears Bogan scream he's reaching? Well, so I think, I want to be very clear about something, which is that I don't think it's on, especially at the summary judgment posture, it's not on us to articulate an alternative. But to the extent that it's a good question, I want to back up a little bit, which is that this entire situation was only created because all of the officers here were, they violated a series of policies laid out by the Philadelphia Police Department. They violated them in sequence. There was the, they shouldn't have been chasing. That was, you know, they were plainclothes, unmarked, which violates the policy on vehicular chases. They were boxing him in, which violates the same policy. The police department, by the way, in their investigation found all of these things. Can you, when you say they were boxing him in, which violated police policy, why is that? They were trying to prevent him from escaping the scene? To be clear, I mean, I'm just articulating the policy. I don't think that, to the extent that everything that happened, it still, and... They actually trapped him, so that he couldn't move, he couldn't get out, and that's because of prior incidents that they were responding to, but why was that wrong? Well, again, to be clear, and maybe it was my fault for bringing this up, you're looking at the use of force at the time that it happened. I was just giving context. The force here, a reasonable jury could find that the force here was objectively reasonable, objectively unreasonable, regardless of all the things that had preceded it. Again, to the extent of what else they could have done, you know, the policy at J284, there's a continuum of force, he just skipped right to the end of that, and there's even a J286, the policy says that it may be a tactically superior police procedure to withdraw, take cover, or reposition. But the key issue and dispute being talked about is a belief that an individual was reaching for something, and the only thing you would surmise at that point would be a gun, and did that occur just before Officer Nicoletti shot, or when in the 48 seconds did that actually occur? Right, so I have a couple of answers to that. The first is that I think this is a classic inference being it's an inferential point, which should be construed in my class. Probably when in the 48 seconds did you perceive that occurred? I'm not sure, partly because the video that I saw doesn't have any audio, but I think you can infer based on the fact that Officer Bogan holstered his own weapon, that it happened sometime prior to that. I think you could also infer from the fact that the car was moving back and forth, a reasonable officer on the scene, a jury could find that an officer on the scene thought that the reaching down to the gear shifter of a car that's moving back and forth is actually just shifting into drive and reverse. I also think that to the extent that what we have here on the one hand is Officer Nicoletti's own testimony against the counterweight of Officer Bogan holstering his weapon, all of the other contextual, none of the other officers pulling theirs or putting them away, I think you just have a lot of contextual facts on the one hand, construed in favor of my client, and on the other hand you have Officer Nicoletti's testimony. And I think if you look at what this Court said in Lamont, including about potentially self-serving testimony, this Court's, or any Court's need to look particularly searchingly at that when there's a deceased individual on the other side who can't testify, a jury, simply put, would be entitled to disbelief him. That's a quintessential jury question, the credibility of Officer Nicoletti's assertions. And I think, again, that sort of comes back to my overarching point here, which is that we've all been standing up here talking about facts, and the standard, as this Court has articulated, and as a couple of you have said, is that unless the District Court's  contradicted by the facts in the record, this Court just looks at those facts as described by the District Court and determines whether or not the District Court correctly decided that they could make out a violation of clearly established law. I think everything that we've talked about here, the one thing that I would emphasize is that the District Court did a great job. The District Court did a great job describing the facts. They're not blatantly contradicted by the facts in the record. If anything, I might quibble with a couple of ways the District Court could have done even more to construe facts and inferences in my client's favor at the summary judgment posture. Under the circumstances where it's not blatantly contradicted by the the District Court's description is not blatantly contradicted by the record, this Court just works from that description and finds that whether or not there's a violation of clearly established law. To the extent that this Court has an unbroken string of precedents, all the way back to Abraham in 1999, you have cases like Al and Revis, Jefferson, of course, which I know... But it found a clearly established right located from Abraham. Which goes all the way back to 1999. It described that law as clearly established as of 1999. Certainly, Officer Nicoletti couldn't have known about Jefferson, but as the Jefferson Court explained, the right that they described as clearly established stretched all the way back to Abraham. There's this unbroken string of precedent that this Court has been issuing sequentially since 1999, which is almost 25 years ago. I would also say some of the cases that my friend has cited are just an apposite for a variety of reasons. He talks about... He talked about Palma. He talked about Scott. They're all high-speed chases. They don't really apply here. I just wanted to emphasize that. The other case that he talked a bunch about that I think is important, he talked about Bland. I think one of the key facts in Bland is that the individual in question verbally threatened the officers. That was, I think, very significant to the Bland Court. Of course, nothing like that happened here. To the extent that this Court is looking again at the... Let me say one other thing. To the extent that this Court is looking at the multi-factor test, Abraham and Jefferson both set out this eight-factor test, I want to make sure that this Court doesn't fully collapse that test just to whether or not there's an immediate threat. That's merely one of the eight factors. And virtually all of the other factors cut in favor of Mr. Dennis here. Severity of the crime at issue, retail drug sales, not very high. Officer Nicoletti himself at JA-268 specifically said that he was a small-time person. He's not moving kilos, I think was the testimony. Obviously, he was unarmed, which gets to the violent or dangerousness, which is separate from the car. The number of people involved, there were a lot of officers on the scene. It was a higher ratio of officers to individuals even than Al, which was a 6-2, and here there's only one of him and six or seven officers. And the severity of injury, obviously, he was deceased, which is far more serious than some of the injuries at issue in cases like Jefferson where the individuals survive. I don't need to take my full time. What would you request in this case? I think this Court could do two different things. One of them is this Court could dismiss for lack of appellate jurisdiction, because as I said, we've been talking nonstop about facts up here. This Court does that all the time. I think there are, if you look at cases like Geist and Freed and Fuller, in excessive force cases, this Court regularly dismisses for lack of appellate jurisdiction. You could also simply affirm the District Court and say that a reasonable jury, the District Court's description is not blatantly contradicted by the record and a reasonable jury could find that the clearly established right articulated by the District Court was violated here. I think this Court could do either of those things. We have said that the reasonableness of an officer's use of force is usually a question for a jury. I think that's from Revis. I think that's right. I think that's a perfectly appropriate response here. But yeah, I think you could dismiss for lack of appellate jurisdiction or simply affirm. If you have other questions, I'm happy to rest. Thank you. I still have a question about his reaching. Sure. Just a thought. He reached down, at the moment that he was shot and killed, he reached down between his two seats. Normally a gear shift is attached to the column, the steering wheel column where you change gears. Apparently in this car he reached down between two seats. Is that correct? I'm just trying to get a picture of why he was shot because he reached down between two seats. The officer thought he was reaching for I don't know, a gun or a gear shift. Yeah, I guess I have three responses to that. The first, and I want to be responsive to the question and then I'll get to my real response. First is that I've driven a lot of cars where the shifter is actually in the middle on the center console. I think that's very common in both automatic and manual cars. The second is that to the extent that someone had said he was reaching, that was way prior. And the, again, Officer Bogan himself had holstered his own weapon subsequent to someone saying that he was reaching. And then the last thing I would say is, again, I just want to underscore the overarching point here, which is that again, we're having these sort of nitty gritty fact questions and the district court's opinion, to the extent the district court's opinion is not blatantly contradicted by the record. It's all well and good, but those are arguments that should be made to a jury as opposed to an appellate court. But yeah, unless anyone has any further questions, I'm happy to rest. Thank you. I'll stop by quoting Scott v. Harris, paraphrasing. Officer Nicoletti defends his actions by pointing to the paramount governmental interest in ensuring public safety. And the respondent has nowhere suggested that this was not the purpose motivating Officer Nicoletti's behavior. What were the facts, Scott? Was that a high-speed chase? That was a high-speed chase, Your Honor.  don't apply to this case, I'd say thanks to the quick decision of Officer Nicoletti. What he did was prevent an escape. He prevented a high-speed chase by making the decision he wanted. They work as a team. That's right, Your Honor. I mean, so how could how possibly could Mr. Dennis have gotten out of the bind he was in because the officers had done their job in making sure that he had no escape? The same way he did ten seconds before and the same way the individual did in tossing a car in doesn't guarantee that it's going to stay there. And if Blum offers the car, the court concluded that the officers could only believe that he was going to escape and the shots from the rear of the vehicle were not constitutionally unreasonable. What is the clearly established test, by the way, under Abraham, as you understand it? Where an individual presents no danger to anyone, it is not constitutionally reasonable to use lethal force when no one is in danger. The shots from Abraham were from the rear of the vehicle. And that's carried forward again in Jefferson v. Elias. But the other cases we've discussed where officers have probable cause to believe that there is a danger, that he's reaching for a weapon, that he's ignoring commands to stop with a vehicle, they have constitutional grounds to use reasonable force. And if they don't, the court should say so clearly for the first time in this case. Jefferson v. Elias helps us because of the clarity in that decision as to the non-dangerousness of the individual. That's completely inapplicable to Mr. Dennis in this case. If we end up disagreeing with you, what should we do? Should we dismiss for lack of jurisdiction, or should we affirm, as suggested by your friend on the other side? To quote Obi-Wan Kenobi, you must do what you feel is right. But I like an opinion describing the state of the law, what the constitutional standard is. Because I don't think I've misrepresented anything, and I don't think Officer Nicoletti acted out of bounds. I'd like the court to describe... You essentially stated, I mean, as noted in Jefferson, a suspect fleeing in a vehicle who has not otherwise displayed threatening behavior has the constitutional right to be free from the use of deadly force when it is no longer reasonable for the officer to believe his or other officers are in immediate peril from the suspect's flight. Correct. And then the... to, you know, to relate that to Bland versus Newark, when a person is driving within 10 feet of officers, creating a mortal threat for those officers, that makes him unlike Mr. Jefferson. In this case, when the officer was on the front of the car at one point earlier, it is conceivable one might say that officer was being threatened, but he got out of that jam, and when things happened, there was, what you had is one officer not being in the front, not being threatened, an officer in the back, or I should say in the window, not being threatened because he had gotten out of the way, and then you had an officer on the other side having holstered his gun, indicating that he did not perceive a threat. And so that sounds like you could still win, but it sounds like you're going to have to do it before a jury. May I respond? Oh, absolutely. The facts of this case are enough for Officer Nicoletti to have probable cause to believe there was a danger. Officer Bogans holstering his weapon does not negate probable cause. The test is an objective test, right? Yes, and it's based on the summary judgment record, which includes the officer's testimony. If it's an objective test, he's going to, the other side's going to argue that a reasonable person wouldn't do that, and you're going to argue, no, no way, a reasonable person would do exactly as Officer Nicoletti did. And I'll show you Brasso versus Haugen. The officer there, in a remarkably similar factual pattern, banging the driver's side window, shattering it, ultimately shooting him. She said he was reaching for a weapon. The individual under suspicion, Mr. Haugen, claimed he was reaching for the keys to the Jeep. That's a factual dispute, similar to the one the district court found here. He could have been reaching for a gun or the gear shift. But the Supreme Court credited the officer's testimony as creating the objective basis for a reasonable person could believe that this person is at risk of serious harm. She said to anybody down the street where he might drive. That factual dispute was not resolved in favor of the summary judgment movement, but the case where the officer sees him reaching, she thinks it's for a gun. The Fourth Amendment doesn't prevent lethal, doesn't prohibit lethal force in that case. When Officer Nicoletti hears that he's reaching, which is a fact credited by the district court, he has probable cause to believe, among all the other things Mr. Dennis was doing that day, that he's at risk of harm to anyone who may be in his path. Just the fact that he was reaching for a gun, in other words, a gun was not displayed, a gun was not in his hand. The fact that he perceived that he was reaching for a gun is sufficient basis to shoot and kill. The fact that he was reaching for a gun is sufficient basis to believe that he may pull one out and point it at somebody innocent. And that's enough to believe that he was a danger. Just the belief Well, I mean, again, in Lamont versus New Jersey, the individual was holding a two-inch crack pipe in his waistband and he pulled his hand out with their flashlights trained on him. They could clearly see what he had in his hand. But in a split second, they were not constitutionally unreasonable to believe that he had a gun. And the police are not required to wait until they see a gun before shooting. That's what this court said in Lamont. I understand and you can correct me if I'm mistaken, but all the police officers at the scene, and I think there were about seven or eight, had holstered their guns except to Officer Nicoletti. Is that accurate? I think there were six. But the holstering of their guns we can say removes risk. When officers have a car surrounded, they're standing on a circle with guns pointed towards the center. So when one holsters his weapon, that's one fewer gun pointed at a fellow officer. So I in defense of Officer Nicoletti, I don't know how to word it, I object to the fact that we deem Officer Bogan's holstering of his weapon as somehow making Officer Nicoletti constitutionally unreasonable. When Officer Bogan holsters his weapon, it's because he felt he didn't need it that quick to shoot it, but it's not like he threw it away. You make a good point, but what you have to show is not just that the facts that you're talking about are contradictory, that they are blatantly contradictory to what the findings were of Judge Wilson, who seemed to me to do a very careful job in trying to lay out the facts here. No doubt he was careful. The conclusion you get from reading the opinion is that Mr. Dennis was simply could not have been less of a danger to anyone on the scene. He was driving his car haltingly. He never actually hit an officer. He was stopped at the end of the scene. That's not what these guys were dealing with. That's not reality. Actually, early on, he did hit the officer in front. I mean, was on the hood. Okay, well then that's three officers that he hit then. So, having hit three officers... That all went by the boards and it's later on when it actually happened that you don't have anybody else with their gun dropped. Right, but we can't talk about later on like the second half in a football game. This is a 37 second period of insanity. The second half of the Eagles game wasn't good. It was a heck of a lot different than the first half. Correct, but when Officer Nicoletti is at the moment he has his gun, it's not like an event  where Officer Bogan said he's reaching for a gun. This is one set of facts. Even in Bland v. Newark, the court describes an incident over here and then an incident over here and there's a separate analysis. This is one incident. What can you say that blatantly contradicts Judge Wilson's careful listing of facts? The manner in which the video shows Mr. Dennis driving his vehicle within 10 feet of the officers is, to quote Bland v. City of Newark, a mortal threat to the officers within 10 feet and reaching for a weapon gives probable cause to believe, an objective belief. Again, I don't need you to conclude that Mr. Dennis was intent on killing anybody, but there were grounds for a belief that he was a threat of serious harm. The district court's conclusion that he was not a threat to anyone is simply unsupportable on the record and it's not the kind of record that, as in Johnson v. Jones, that the officers were standing here rather than there. This is a core role of the appellate courts to determine whether the law is established on the facts as in Plumall v. Ricard. Facts found in the lower courts, the Supreme Court said there were no disputed facts. This court can say there are no disputed facts based on the video and the testimony of the officers in the record, in the summary judgment record. There were grounds for an objectively reasonable belief. Your argument is an objectively reasonable person would have done nothing different than what was done here, and the argument on the other side is an objectively reasonable person with the facts that we have would not have shot, and that sounds... My argument is not that an objectively reasonable person would never have done anything different. My argument is that Officer Nicoletti did not act constitutionally unreasonably. It's not the only thing he could have done, but what he did was not prevented by the Fourth Amendment, and if it was, the facts of this case, the right claims were not clearly established on August 20th, 2018. At the time that Nicoletti approached Dennis, he had his gun drawn. Is that accurate? He had his gun drawn and pointed... When he stepped out of his vehicle? No. Well, when he was out of the vehicle he approached Richard... He approached Jeffrey Dennis while Dennis was in the vehicle, and at the time that Nicoletti approached Dennis, he had his gun drawn and pointed inside the vehicle because he thought there was a... He was reaching for a weapon there. Is that correct? Yes. Officer Nicoletti drew his weapon sometime between when he stepped out of his vehicle in the rear and when he got to the door, so as he's walking forward, he draws his weapon. Yes. And he never put his window down until Glasgow broke the window. Is that correct? Yes. He refused commands to stop his car and to submit to arrest, and so the window was broken. Not by my client, and no claim in the case that that was constitutionally unreasonable under the Fourth Amendment. I understand that at that particular point in time all the other officers on the scene had holstered their weapons. Is that correct? Officer Sumpter, who's the gentleman off the rear passenger sign, I don't know that he holstered it. He may have lowered it. I read somewhere that all officers had holstered their weapons, and the reason I asked the question is because from their point of view, it seemed like the problem had abated substantially, and there was no reason for them to approach the vehicle with a gun. Right. And so if that's true, and I don't know that that's true, that they ceased to perceive a danger, but if it's true that Officer Bogan's subjective belief that well, it's over, I can holster the gun and think about what's for dinner, that doesn't negate probable cause for Officer Nicoletti to believe that Mr. Dennis was a danger. You see, when several officers holster their weapons, that doesn't make it objectively unreasonable not to holster a weapon, at least under the prevailing case law. My impression is they perceived that whatever danger they were confronting had abated substantially. I don't think so. They were continuing to participate in the takedown of the vehicle. I mean, maybe he needed two hands instead of one with a gun. I don't know what his subjective I don't know that his subjective beliefs negate any objective belief, objective grounds for Officer Nicoletti. Thank you very much. Thanks to all counsel. We will take this case under advisement, and we are adjourned. Thank you.